WAITS SMITH v. SOUTH AND WESTERN RAILROAD COMPANY.

(Filed 15 December, 1909.)

1. Independent Contractors — Joint Torts — Partition — Master and Servant.

A railroad company cannot be held liable as a joint tort feasor with its independent contractor for an injury to an employee of the latter, when there is no evidence or suggestion that the former assumed an active part, by encouragement, direction or control of the work wherein the injury complained of was received.

2. Same—Release of Liability—Effect.

The plaintiff received the injury complained of while engaged in the employment of an independent contractor of a railroad company in building the latter's roadbed, and brought suit against the railroad and the contractor, alleging that they were joint tort feasors. He introduced the contract between the defendants

wherein it appeared that the contractor had agreed to indemnify the railroad from liability of the character demanded by plaintiff. *Held*, a release in full given by the plaintiff to the independent contractor in consideration of a compromise likewise released the liability of the railroad, in the absence of evidence tending to show that the latter actively participated in the alleged wrong. The principles of law applicable to the master's liability for the wrongful acts of the servants discussed by MANNING, J.

APPEAL from *Justice, J.*, August Term, 1909, of RUTHERFORD.

The plaintiff sued to recover damages for an injury received by him, through the negligence of the defendants, while he was working for the Millard Quigg Construction Company, a corporation, under the laws of Virginia, engaged in constructing a part of the railroad of the South and Western Railroad Company. The injury was received in October, 1907. The plaintiff was employed to do the work of an ordinary laborer and belonged to the night force. The Millard Quigg Construction Company filed its petition to remove the cause to the Federal Court, and .from the order disallowing its motion and retaining the action in the State Court this company gave notice of appeal to the Supreme Court, whereupon the plaintiff executed on 30 August, 1909, for the consideration mentioned therein, which was paid, the following paper writing:

"NORTH CAROLINA—Rutherford County.
 Superior Court, August Term, 1909.

WAITS SMITH
*v.*
SOUTH AND WESTERN RAILROAD COMPANY AND MILLARD QUIGG
CONSTRUCTION COMPANY.

"In the above-entitled cause, in order to secure a trial at this term of court, the plaintiff covenants and agrees with the Millard Quigg Construction Company, upon the call of the case for trial and upon entering upon a trial of the same at this term of court, to enter a nonsuit as to the defendant Millard Quigg Construction Company; and, in consideration of the sum of $550 paid to Waits Smith by the Millard Quigg Construction Company, the receipt whereof is hereby acknowledged, the said Waits Smith covenants and agrees with the Millard Quigg Construction Company not to prosecute any new or further action against the Millard Quigg Construction Company for any personal injuries sustained by the said Waits Smith whatsoever prior to this date, by any negligence of the Millard Quigg Construction Company."

The defendant railroad company had, in its answer filed, denied all negligence, denied it had employed or had any control over the work of plaintiff; alleged that the construction company was an independent contractor; that the construction company had employed plaintiff, designated his work, and that if he was negligently injured it was the negligence of the construction company.

His Honor permitted amendments to the pleadings on the part of the defendant, setting up the paper writing above quoted, and its effect, and the plaintiff to reply thereto. The trial proceeded against the railroad company, and evidence was offered, detailing the injury received by plaintiff, the time, place and circumstances, and also that plaintiff was employed, paid and directed in his work by the construction company. The paper writing was also offered in evidence and admitted. The plaintiff also offered the written contract under which the construction company was doing the work, which contract contained the stipulation that the construction company would indemnify the railroad company, among other things, "from damages arising from injuries sustained by mechanics, laborers or other persons, by reason of accident or otherwise, including cost and expense of defense, provided that he be duly notified of the bringing of suits in such cases, and he be permitted to defend the same by his own counsel if he should so select." In the progress of the trial the plaintiff admitted that he sought to hold the defendants only as joint *tort feasors,* and at the close of his evidence the defendants' motion to nonsuit was sustained. The plaintiff excepted and appealed to this Court.

*R. E. Morris, J. M. Mull* and *J. T. Perkins* for plaintiff.
*Hudgins, Watson & Johnston* for defendant.

MANNING, J., after stating the case: The only question presented for our consideration by the briefs and argument of counsel is the effect of the paper writing executed by the plaintiff on 30 August, 1909, to the construction company. Upon the facts presented, the decision of this Court in *Brown v. Louisburg,* 126 N. C., 701, approved in *Raleigh v. Railroad,* 129 N. C., 265, is decisive. If the construction company were an independent contractor, it would seem clear that the railway company would not be liable; and the plaintiff, therefore, by his agreement with the construction company, has bound himself not to sue the only party legally liable to him. *Avery v. Railroad,* 137 N. C., 130. The only other theory of the liability of the railroad company

151—31

to the plaintiff is that the railroad company was the master and the construction company the servant or the railroad company, the principal, and the construction company the agent, doing its work within the scope of its agency. That they were not tort feasors would seem to be settled in *Brown v. Louisburg, supra,* in which case this Court said: "The defendants, however, were not joint tort feasors. To make persons joint tort feasors they must actively participate in the act which causes the injury." The railroad company had no active part, by encouragement, direction or control, in the doing of the work in which plaintiff was injured. There was no allegation or suggestion that the construction company was not a capable servant, or that the instrumentalities selected for doing the work were not properly suitable and in general use and good condition. The statement by plaintiff that he sought to recover from the defendants as joint tort feasors is not sustained by the authority cited or by the evidence offered.

We next consider the theory of liability growing out of the relations of master and servant or as principal and agent. The principle underlying the liability of the master for the acts of his agent is very clearly and succinctly stated by *Alderson, B.,* in *Hutchinson v. Railroad,* 5 Exch., 343: "The principle upon which a master is in general liable to answer for accidents resulting from the negligence or unskillfulness of his servant is that the act of his servant is in truth his own act. If the master is himself driving his carriage and, from want of skill, causes injury to a passer-by, he is, of course, responsible for that want of skill. If, instead of driving the carriage with his own hands, he employs his servant to drive it, the servant is but an instrument set in motion by the master. It was the master's will that the servant should drive, and whatever the servant does in order to give effect to his master's will may be treated by others as the act of the master. *Qui facit per alium, facit per se.*"

If the relation of master and servant existed, or the relation of principal and agent, the servant in one relation or the agent in the other relation did the careless and unskillful act which injured the plaintiff and was primarily liable for it, and upon the principle expressed in the maxim, *Qui facit,* etc., the master or principal would be liable. If this principle is invoked to impose liability, can it not also be invoked for protection? If the master is bound through his agent, can he not be released through his agent? If an act of negligence imposes liability, ought not an act of fidelity bring relief? This would seem to be obvious, except in those cases where the master actively participates in

the wrong and thereby makes himself a joint tort feasor. Every doubt of the ultimate liability of the construction company for the injury to the plaintiff was removed when plaintiff offered in evidence the contract, which expressly stipulated that the construction company should save harmless the railroad company from liability for such injuries. If the plaintiff should recover a larger sum from the railroad company, then, under the contract stipulation, the railroad company could recover from the construction company the judgment and expenses and costs. Such a result would be a complete destruction of the construction company's rights under its contract with the plaintiff. We think this view is sustained by this language of *Pearson, C. J.,* in *Russell v. Adderton,* 64 N. C., 417: "For which reason (the intention of the parties) the courts incline to adopt the construction which gives to the instrument the effect merely of a covenant not to sue, and the intention of the parties is carried out by allowing the creditor to take judgment at law, leaving the party who holds the covenant to his remedy in equity for a specific performance, by which he is fully protected, not only from paying any more directly, but, if there be sureties, by restraining the creditor from collecting any amount out of them, because that would subject him to their action and thus indirectly violate the covenant." Under our present system, where law and equity, legal and equitable rights, are administered in the same action, his Honor, in the trial of this action, accomplished what *Chief Justice Pearson* declared could be done by a suit in equity.

After a careful consideration of the authorities cited in the elaborate brief of the learned counsel for the appellant, we are unable to reach a different conclusion. The judgment of the court below is therefore

Affirmed.