GEORGE T. WRENN, Plaintiff v. MARIA PARHAM HOSPITAL,INC., Defendant

No. COA99-12

(Filed 7 December 1999)

**1 Appeal and Error— law of the case—appellate decision— vicarious liability of hospital—voluntary dismissal of doctor—new legal issue—second summary judgment motion**

The trial court did not err in a negligence case by considering and granting defendant hospital's "new" motion for summary judgment filed after the Court of Appeals' prior unpublished opinion concerning defendant's vicarious liability for its alleged agent, Dr. Byrd, because: (1) the entry of a voluntary dismissal with prejudice as to Dr. Byrd materially changes the factual setting and raises an entirely new legal issue as to the effect of that voluntary dismissal on the liability of defendant; (2) the Court of Appeals did not address the effect of the voluntary dismissal in its unpublished decision of 16 June 1998, meaning that decision did not become the "law of the case" on the issue now before the Court; and (3) defendant's "new" motion for summary judgment was based on an event, the filing of a voluntary dismissal, which occurred after the trial court granted defendant's first motion for summary judgment.

**2. Civil Procedure— second voluntary dismissal—dismissal with prejudice—adjudications on the merits**

The trial court did not err in concluding plaintiff is barred from proceeding against defendant-alleged employer on the theory of respondeat superior after plaintiff dismissed his negligence claim against the alleged employee with prejudice and without payment because: (1) it was the second dismissal of plaintiff's claims against the alleged employee, and therefore, operated as an adjudication on the merits under N.C.G.S. § 1A-1, Rule 41; and (2) the voluntary dismissal itself specifically stated that it was with prejudice, which also operated as a disposition on the merits precluding subsequent litigation.

Appeal by plaintiff from judgment entered 16 October 1998 by Judge Henry W. Hight, Jr., in Durham County Superior Court. Heard in the Court of Appeals 23 September 1999.

On 4 September 1989, Carolyn Wrenn took her husband, George T. Wrenn (plaintiff), to the emergency room of Maria Parham Hospital

(the hospital), located in Vance County. Maria Parham Hospital, Inc. (defendant), a non-profit corporation, owned and operated the hospital. Dr. Jesse Byrd (Dr. Byrd), an emergency room physician, examined and treated plaintiff. Coastal Emergency Services, Inc. (Coastal), provided Dr. Byrd and other emergency room physicians to the hospital pursuant to a contract between Coastal and defendant. A sign posted outside the emergency room at the time plaintiff was admitted stated, "the emergency physician on duty [is] not an employee or agent of Maria Parham." Dr. Byrd diagnosed plaintiff's condition as gastroenteritis and released him. Later that same evening, plaintiff's condition worsened and he went into septic shock. His wife brought him back to the emergency room of the hospital. Plaintiff was flown to Duke University Hospital due to the seriousness of his condition. Ultimately, plaintiff lost the distal half of each of his feet, and one of his fingers.

On 8 January 1992, plaintiff and his wife, Carolyn (collectively, the Wrenns), filed an action against defendant, Dr. Byrd, and against Coastal. The Wrenns contended, as they have done throughout this litigation, that Dr. Byrd misdiagnosed plaintiff husband's condition and released him from the Maria Parham emergency room in an unstable condition. The Wrenns contended that the defendant was liable under theories of *respondeat superior* (a master's vicarious liability for the acts of a servant), nursing negligence, and corporate negligence. Defendant moved for summary judgment, but the trial court denied the motion on 29 October 1993. The Wrenns amended their complaint on 5 April 1994 to allege only a claim for vicarious liability against defendant, and to allege negligence claims against Dr. Byrd and Coastal. On 7 June 1994, the Wrenns voluntarily dismissed without prejudice "all claims" against defendant Maria Parham Hospital, Inc., but reserved their claims against the other defendants. On 14 October 1994, the trial court granted summary judgment against Carolyn Wrenn on her claim for negligent infliction of emotional distress and she appealed to this Court. Plaintiff then voluntarily dismissed without prejudice his claims against Coastal and Dr. Byrd. This Court reversed the entry of summary judgment on Carolyn Wrenn's claim for negligent infliction of emotional distress and remanded her case for trial. *Wrenn v. Byrd*, 120 N.C. App. 761, 464 S.E.2d 89 (1995), *disc. review denied*, 342 N.C. 666, 467 S.E.2d 738 (1996).

On 6 June 1995, plaintiff then refiled his complaint against the defendant, Dr. Byrd, and Coastal. Plaintiff alleged that Dr. Byrd was

negligent, and that defendant was liable on theories of vicarious liability, nursing negligence and corporate negligence. Plaintiff's action, and that of his wife, were again set for trial in June 1997. Prior to that trial, however, Carolyn Wrenn dismissed her claim against the Hospital. The Wrenns settled their claim against Coastal pursuant to a settlement agreement. The settlement agreement with Coastal contained the following provisions:

2. Coastal shall pay to George T. Wrenn the sum of Eighty Thousand and No/100 Dollars ($80,000.00) and to Carolyn M. Wrenn the sum of Seventy Thousand and No/100 Dollars ($70,000.00). Within two (2) working days of the receipt of the final payment, to be paid as follows: (1) $70,000.00 on or before April 25, 1997, to Carolyn M. Wrenn and $5,000.00 to George T. Wrenn; and (2) $75,000.00 to George T. Wrenn on or before May 27, 1997, Mr. and Mrs. Wrenn shall cause to be filed a Voluntary Dismissal With Prejudice of the Lawsuit as to all Defendants except Maria Parham Hospital, Inc.

3. Subject to the provisions of paragraph 4 [regarding payment], Mr. and Mrs. Wrenn hereby release and forever discharge Coastal, its employees, partners, agents, representatives, independent contractors, officers, directors, trustees, attorneys, and all other persons, firms or corporations connected with any of them from any and all claims . . . .

3.1 Notwithstanding any provision of this Settlement Agreement and Release in Full, George T. Wrenn [plaintiff] specifically does not hereby release Maria Parham Hospital, Inc. He specifically reserves and retains all rights to assert and pursue any and all claims he may have against Maria Parham Hospital, Inc.

On 27 May 1997, the Wrenns filed a joint voluntary dismissal with prejudice as to Coastal, and a joint voluntary dismissal with prejudice "without payment" as to Dr. Byrd. The following language was handwritten on each voluntary dismissal immediately above the date and signature of counsel for plaintiff:

Plaintiffs expressly reserve all claims against Maria Parham Hospital, Inc.

On 1 May 1997, defendant filed a motion for summary judgment. It is not clear from the record on appeal when the trial court heard the motion, but the trial court signed an order granting the motion for

summary judgment on 23 May 1997. The order was then filed on 28 May 1997 in the office of the Clerk of Superior Court of Durham County.

On 13 June 1997, plaintiff appealed from the grant of summary judgment against him. Plaintiff included in the record on appeal the 27 May 1997 voluntary dismissal of his claims against Dr. Byrd. On 16 June 1998, this Court filed an unpublished opinion (COA97-1043) in which we held that summary judgment was improvidently granted on plaintiff's vicarious liability claim because there was a genuine issue of material fact as to whether Dr. Byrd was an employee of the hospital or an independent contractor. We also held that summary judgment was properly granted on plaintiff's vicarious liability claim based on the non-delegable duty doctrine, and held that plaintiff's nursing negligence and corporate negligence claims were barred by the statute of limitations.

Following our decision of 16 June 1998, defendant filed a "new" motion for summary judgment, arguing that plaintiff's voluntary dismissal with prejudice of his claims against Dr. Byrd extinguished the vicarious liability of the defendant, Dr. Byrd's alleged master. The trial court allowed the new motion for summary judgment, and dismissed plaintiff's claim with prejudice. Plaintiff appealed.

*Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., by Adam Stein; and Bentley & Associates, P.A., by Charles A. Bentley, Jr., for plaintiff appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Beth R. Fleishman for defendant appellee.*

HORTON, Judge.

Plaintiff argues that (I) the prior unpublished opinion of this Court dated 16 June 1998 was *res judicata* as to his vicarious liability claim against defendant hospital, and that (II) the dismissal of his claims against Dr. Byrd with prejudice and without payment was, in effect, a release given in good faith pursuant to the Uniform Contribution Among Tort-Feasors Act, so that defendant was not discharged from liability. We disagree with both contentions and affirm the judgment of the trial court.

I.

[1] Plaintiff argues that this Court's unpublished decision of 16 June 1998 established his right to a trial on the issue of defendant's vicari-

ous liability for the negligent acts of its alleged agent, Dr. Byrd; that the decision became the law of the case, and prevented the trial court from considering the "new" motion for summary judgment. We have carefully considered plaintiff's argument, but cannot agree. When this case was before us on plaintiff's prior appeal, we framed the issue as follows:

> The question here is whether there is a genuine issue of material fact that Dr. Byrd was subject to regulation, interference or control by defendant hospital with respect to the manner or method of performing his duties as an emergency room physician. Plaintiff argues that there was some evidence that Dr. Byrd was acting as an agent of defendant hospital at the time he treated and discharged plaintiff and summary judgment was inappropriate. After careful review, we agree.
>
> . . . .
>
> Given that there is evidence of several factors that support the contention that Dr. Byrd was an employee rather than an independent contractor, we hold that summary judgment was inappropriately granted. We therefore reverse the judgment of the trial court and remand for a new trial.

Both defendant and Dr. Byrd have contended throughout the course of this litigation that Dr. Byrd was an independent contractor, not an employee of Maria Parham Hospital. This Court found that there were several factors which supported the plaintiff's contention that Dr. Byrd was an employee of Maria Parham, and remanded the case for trial on that issue. We did not discuss in the opinion, nor did the parties argue in their briefs, the question of the effect of plaintiff's voluntary dismissal of his claims against Dr. Byrd with prejudice and "without payment." Plaintiff strenuously contends, however, that because he included the 27 May 1997 voluntary dismissal with prejudice of his claims against Dr. Byrd in the record on appeal, the issue of its effect was properly before this Court and could have been asserted by the defendant. Plaintiff reasons that since defendant could have raised the issue of the voluntary dismissal's effect during his prior appeal, our prior decision has *res judicata* implications, and bars the trial court from considering and granting the motion for summary judgment now before us.

Although plaintiff included the voluntary dismissal document in the prior record on appeal, we note that the voluntary dismissal of

Dr. Byrd with prejudice was entered on 27 May 1997, *after* the trial court had made its decision on the "new" motion for summary judgment, and four days *after* the trial court signed the order granting summary judgment. Plaintiff agrees that the order granting summary judgment was signed by the trial court on 23 May 1997, but contends the order was not "entered" pursuant to Rule 58 of the Rules of Civil Procedure until 28 May 1997, when it was filed in the office of the clerk of superior court. Although the date the order granting summary judgment was "entered" is important for some purposes, the 27 May 1997 voluntary dismissal with prejudice was simply not before the trial court when the trial court signed its order granting defendant's motion for summary judgment.

Plaintiff relies on numerous appellate decisions which stand for the proposition that, since he included the voluntary dismissal with prejudice of Dr. Byrd in the record filed in connection with his prior appeal, the issue *could have been raised* before this Court. Therefore, he argues, this Court's unpublished decision of 16 June 1998 is necessarily *res judicata* as to all issues which could have been raised. We disagree.

The decisions plaintiff cites do not support his position. Instead, the decisions deal with the commonly occurring situation where a litigant seeks to pursue a previously denied motion on a new legal theory, even though there has been no change in the underlying facts of the case. For example, plaintiff relies on *Gibbs v. Higgins*, 215 N.C. 201, 1 S.E.2d 554 (1939). In *Gibbs*, the plaintiffs attacked a transfer of certain land on Jack's Creek in Yancey County on the grounds that the grantor lacked the mental capacity to make the transfer to the defendants. A jury ruled against the plaintiffs, and our Supreme Court affirmed the entry of judgment against the plaintiffs. *Higgins v. Higgins*, 212 N.C. 219, 193 S.E. 159 (1937). The plaintiffs then sought to bring a second action against the same defendants, alleging that the grantor was under the undue influence of the defendants when he deeded the land on Jack's Creek. There had been no change in the underlying facts or parties, and our Supreme Court held that the plaintiffs' argument of undue influence "could have been asserted and relied upon in the former action." *Gibbs*, 215 N.C. at 205, 1 S.E.2d at 558.

Plaintiff also relies on the decision of this Court in *Board of Education v. Construction Corp.*, 64 N.C. App. 158, 306 S.E.2d 557 (1983), *disc. review denied*, 310 N.C. 152, 311 S.E.2d 290 (1984).

Defendant Juno Construction Corporation was the general contractor and defendant Statesville Roofing & Heating Company was the subcontractor in connection with the installation of a roof on a Burke County high school. Leaks developed in the roof, and Burke County Board of Education (the Board) sued both defendants for breach of contract. The Board also sued defendant Statesville Roofing & Heating Company (Statesville Roofing) for breach of contract for failure to maintain the roof. Prior to trial, the trial court denied Statesville Roofing's motion to amend its pleadings to allege that the roof maintenance contract was unenforceable. The jury found that both defendants had breached their contracts, but found that the roof design furnished to defendants by plaintiff was defective, and awarded no damages. On appeal to this Court, we upheld the decision of the trial court as to Juno, but found Statesville Roofing liable on the roof maintenance contract. We also upheld the ruling of the trial court denying Statesville Roofing's motion to amend its pleadings, and remanded the case to the trial court for determination of damages. *Bd. of Education v. Construction Corp.*, 50 N.C. App. 238, 273 S.E.2d 504 (1981). On remand, defendant Statesville Roofing renewed its motion to amend, advancing a new theory, a public policy argument, in support of the motion to amend its pleadings. On a second appeal, we held that the motions were identical, the underlying facts had not changed, and the previous appellate decision became the "law of the case."

> Where a question before an appellate court *has previously been answered* on an earlier appeal in the same case, the answer to the question given in the former appeal becomes "the law of the case" for purposes of later appeals.

*Construction Corp.*, 64 N.C. App. at 160, 306 S.E.2d at 559 (emphasis added).

In the case before us, however, the entry of a voluntary dismissal with prejudice as to Dr. Byrd materially changes the factual setting and raises an entirely new legal issue as to the effect of that voluntary dismissal on the liability of defendant. We did not answer that question in our decision of 16 June 1998 and our decision did not become the "law of the case" on the issue which is now before us. The trial court properly considered defendant's "new" motion for summary judgment based on an event which occurred after the court granted the defendant's earlier motion for summary judgment. This assignment of error is overruled.

## II.

**[2]** Plaintiff's second argument raises a more difficult question: may an injured plaintiff proceed against an alleged employer on the theory of *respondeat superior*, after having dismissed with prejudice and without payment plaintiff's negligence claim against the alleged employee? We conclude that plaintiff is barred from proceeding against defendant, the alleged employer of Dr. Byrd.

At common law, the release of the servant released the master as well. *Smith v. R.R.*, 151 N.C. 479, 66 S.E. 435 (1909). The master was not considered to be a joint tort-feasor with the servant because it did not " 'actively participate in the act which cause[d] the injury.' " *Id.* at 482, 66 S.E. at 436 (citation omitted). Since the liability of the master was merely vicarious, the release of the master's servant necessarily released the master from liability.

In 1967, our General Assembly enacted the Uniform Contribution Among Tort-Feasors Act (the Uniform Act), codified as N.C. Gen. Stat. §§ 1B-1 to 1B-6. The Uniform Act provides in pertinent part that:

When a release or a covenant not to sue . . . is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide[.]

N.C. Gen. Stat. § 1B-4 (1983).

Initially, it did not appear that the Uniform Act made any change in the established law of master and servant since the two were not considered to be joint tort-feasors. However, in *Yates v. New South Pizza, Ltd.*, 330 N.C. 790, 412 S.E.2d 666, *reh'g denied*, 331 N.C. 292, 417 S.E.2d 73 (1992), our Supreme Court held that the term "tort-feasors" as used in the Uniform Act included vicariously liable masters. Thus, the *release* of a servant did not release a vicariously liable master, unless the terms of the release provided for release of the master. In *Yates*, the plaintiff was injured in an accident with a pizza deliveryman who was working for New South Pizza, Ltd., d/b/a Domino's Pizza. The plaintiff settled with the driver for $25,000.00, the amount of his insurance coverage, and executed a *covenant not to sue* the driver or the driver's insurer, but "expressly reserved all

rights to proceed against defendant . . . employer." *Id.* at 791, 412 S.E.2d at 667. In a divided opinion, our Supreme Court held that *"for purposes of this Act,* a 'tort-feasor' is one who is liable in tort." *Id.* at 794, 412 S.E.2d at 669 (emphasis in original).

In *Harris v. Miller,* 335 N.C. 379, 438 S.E.2d 731 (1994), the same question was before our Supreme Court. In *Harris,* the plaintiff brought a medical malpractice claim against a doctor, nurse, and hospital. The plaintiff then settled all claims with the nurse and hospital, and executed a *covenant not to sue* the nurse and hospital, but specifically reserved the right to pursue his claims against the doctor. The trial court then dismissed the vicarious liability claim against the doctor on the ground that there was insufficient evidence of a master-servant relationship between the doctor and the operating room nurse,. and on the separate ground that the plaintiff's settlement with the nurse released the doctor. In accord with *Yates,* our Supreme Court held in *Harris* that "the release of a servant no longer operates to release a vicariously liable master, unless the terms of the release so provide." *Id.* at 398, 438 S.E.2d at 742. Thus both *Yates* and *Harris* hold that execution of a release or covenant not to sue the servant does not release the vicariously liable master.

In the present case, however, the litigation against the alleged servant, Dr. Byrd, was not terminated by a release or covenant not to sue, but was terminated by a voluntary dismissal with prejudice and without payment. Even if the voluntary dismissal had not recited that it was "with prejudice," it was the second dismissal of plaintiff's claims against Dr. Byrd and would have operated as an adjudication on the merits. "Such a dismissal is with prejudice, and it operates as a disposition on the merits and precludes subsequent litigation in the same manner as if the action had been prosecuted to a full adjudication against the plaintiff." *Graham v. Hardee's Food Systems,* 121 N.C. App. 382, 384, 465 S.E.2d 558, 559-60 (1996); *see Barnes v. McGee,* 21 N.C. App. 287, 289, 204 S.E.2d 203, 205 (1974); N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (1990) ("a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this state . . . an action based on or including the same claim[]").

In *Barnes,* decided after the enactment of the Uniform Act, the plaintiff contended that he was injured by the negligence of defendant McGee while McGee was acting as a servant of defendant YMCA. At trial, the trial court allowed the YMCA's motion for a directed ver-

dict, and dismissed with prejudice the action against McGee. On appeal, this Court held that a " '[d]ismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is effective *not only on the immediate parties but also on their privies.*' " *Barnes*, 21 N.C. App. at 289, 204 S.E.2d at 205 (quoting 9 Wright and Miller, Federal Practice and Procedure, § 2367, pp. 185-86) (emphasis in original). Thus, "[a] judgment on the merits in favor of the employee precludes any action against the employer where, as here, the employer's liability is purely derivative." *Id.*

This Court decided *Graham* following the Supreme Court decisions in *Yates* and *Harris*. In *Graham*, the female plaintiff sued Hardee's and its employee Rogers, based on sexual advances allegedly made by Rogers. The plaintiff dismissed her original complaint without prejudice, and then refiled her claim. Hardee's moved for summary judgment, following which the plaintiff again voluntarily dismissed her claim against Rogers. The trial court then granted Hardee's motion for summary judgment, and the plaintiff appealed. This Court held that "each of these claims [against Hardee's] as presented by plaintiff is dependant upon the alleged tortious conduct of Rogers. Since Rogers has been adjudicated not liable for the alleged conduct as a result of plaintiff's second voluntary dismissal of her claims against him, the remaining claims against Hardee's must also fail." *Graham*, 121 N.C. App. at 385, 465 S.E.2d at 560.

In the case before us, the dismissal against Dr. Byrd was a second dismissal of plaintiff's claims against him and therefore operated as an adjudication on the merits under the express language of Rule 41 of the Rules of Civil Procedure and our holding in *Barnes*. Furthermore, the voluntary dismissal itself specifically stated that it was with prejudice. Under the reasoning of our Court in *Graham*, the dismissal with prejudice as to Dr. Byrd operated as a disposition on the merits, and "precludes subsequent litigation [against defendant Maria Parham Hospital, Inc.] in the same manner as if the action had been prosecuted to a full adjudication against the plaintiff." *Id.* at 384, 465 S.E.2d at 559-60. The trial court did not err in its grant of summary judgment in favor of defendant, and this assignment of error is overruled.

Affirmed.

Judges WYNN and EDMUNDS concur.